### The State v. G. D. Kelley et al.

1. SCHOOL TAX—SHERIFF'S BOND.—An action in the name of the State will lie against the sureties of a sheriff, as collector of taxes, executed to the State for default of such sheriff in paying over moneys collected of the school tax levied for the years 1871 and 1872.
2. SAME.—Such liability is not affected by the fact that the levy of such taxes was made subsequent to the date of the bond.
3. COUNTY TAX—SHERIFF'S BOND.—The sheriff's bond to secure the county revenue is for the security of the revenue levied to defray the ordinary expenses of the county from year to year.
4. PRACTICE.—Upon the sheriff leaving the State, suit may be dismissed as to him when not served with citation.

APPEAL from Anderson. Tried below before the Hon. M. H. Bonner.

This was a suit filed April 11, 1873, against John D. Kelley, (alleged to be absent from the State and insolvent,) late sheriff of Anderson county, and his sureties Ira B. Taylor, H. C. Hunt, and George W. Whitmore. The petition alleged the election of Kelley to the office of sheriff of Anderson county, his qualification, the execution of bond in the sum of $8,000, on 26th October, 1870, conditioned

that Kelley should "faithfully perform all the duties imposed upon him by law, and by the instructions of the Comptroller of Public Accounts of the State of Texas, for the collection of taxes, until his successor shall have been duly qualified, and shall duly collect, account for, and pay over at the treasury of the State aforesaid, all sums of money collected by him due the State aforesaid on account of State taxes, as well as all sums of money collected by him which were uncollected by his predecessors in office;" that said Kelley, as sheriff of Anderson county, during the years 1871 and 1872, collected of the school taxes assessed for these years in said county $15,208.15; that the Comptroller of Public Accounts, and the Superintendent of Public Instruction had directed said Kelley to pay over the said school taxes so collected to one John S. Shuttock, the treasurer of the Board of School Commissioners for Anderson county; that said Shuttock had made demand of Kelley for said money; default on part of Kelley, &c.

The suit was dismissed as to Kelley. The sureties, Taylor, Hunt, and Whitmore filed general and special exceptions to the petition, claiming that the school tax was not a State tax, nor secured by said bond, &c.

The court sustained the exceptions, and the State appealed.

*A. J. Peeler, Assistant Attorney General* for the State, cited Bell *v.* McDonald, 9 Tex., 378; Burnett *v.* Henderson, 21 Tex., 589; Paschal's Dig. of Dec., § 9140; Paschal's Dig., arts. 6650, 6657, 6678, 7522, 7608, 7609, 7612; State *v.* Nunn, 2 Met. (Ky.,) 199; The People *v.* Love, 25 Cal., 520.

*F. M. Hays,* for appellees.

IRELAND, ASSOCIATE JUSTICE.—It does not appear upon what ground the general exceptions to the petition were sustained. It is assumed by counsel that it was because the bond declared on is payable to the State and designed

to secure the State in the collection of the State taxes—the tax alleged to have been collected being "school tax." (Paschal's Dig., 6708, 6709.) Article 7612 provides for a bond to secure the "county taxes."

The bond declared on is dated 26th October, 1870.

On the 22d of April, 1871, the legislature passed another act (Paschal's Dig., art. 7681) prescribing conditions of bonds of sheriff not materially different from the act of 1870.

It is insisted by the defendants that the one per cent. school tax constitutes no part of the "State taxes," and that therefore the conditions of the bond have not been broken.

It is well established that the contract of suretyship cannot be enlarged against the surety, and that he has a right to stand upon the exact condition of his undertaking. (United States v. Kirkpatrick, 9 Wheat., 720.)

Is the "school tax" any the less "State taxes" because it was designed to be used in the counties? Can it be said to be "county taxes" in the sense in which these words are used in the law requiring bonds to be given?

These are the questions upon which this case must turn. I think it clear that the taxes provided for in the bond to secure the county revenue is that fund levied and collected to defray the ordinary expenses of the county during the year. It did not mean the money levied by authority of law, to be controlled and disbursed by the State and by its agents and authority. The State has not and does not assume control of the "county taxes." The sovereign authority simply gives to these local governments, parts of herself, authority to levy and collect such amount of revenue as to the supreme head may seem proper. This is done by general law, and the State takes no note or care what amount may be levied or collected, provided it does not exceed the maximum. Nor does the State in any way assume control of the money when collected, nor in

any way look after its disbursement. Can this be said of the one per cent. school tax? Certainly not.

The State, through its agents, assumed entire control; it directed the amount levied, its mode and manner of collection, to whom the collectors should pay, and how it should be expended.

The fact that the law levying the tax alleged to have been collected was passed after the bond was given can make no difference.

To hold that the sureties were not liable for that money would be to cripple the Government, and throw around it such embarrassments as would debar the legislature from increasing the rate of taxation or from doing any act that would throw more money into the hands of the officer than could have been done under the law in force when the bond was given. This view of the law is not sound.

The suit was properly dismissed as to Kelley, if he was a non-resident. The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.