A. J. Swan, Adm'r of Whitmore, v. The State.

1. JURISDICTION.—The act of 1870, (Paschal's Dig., art. 7638,) authorizing suits to be brought in the District Court of Travis county, on the official bonds of defaulting sheriffs, furnishes a cumulative remedy, and does not confer on that county exclusive jurisdiction in such cases. The county in which a defaulting sheriff has his residence had, under Paschal's Dig., art. 1423, concurrent jurisdiction in suits on his official bond. ˶

2. APPROVED.—The State *v.* Kelley, 43 Tex., 667, approved.

3. SCHOOL TAX.—The levy of the one per cent. school tax was unconstitutional. The Constitution contemplated the management and direction of the public schools, and the disbursement of the funds collected by taxes imposed, to be vested in local boards in the school districts, subject to the supervision of the superintendent of public instruction; and the statute created a central board composed of the governor, attorney-general, and superintendent, and, in effect, vested in it the absolute power of control and direction of the local boards. The statute was a perversion of the provisions of the Constitution in the establishment of a public-school system, which erected a central power unknown to the Constitution, destructive of the constitutional rights of the local authorities, and a dangerous engine of political power.

3. Taxation.—A tax collector who has acted for the State in the collection of taxes, cannot, in a suit brought against him for failing to pay over, call in question the validity of the act under which he acted in collecting said taxes.

4. Taxes—Collector's bonds.—A tax-collector's bond, which binds, by its terms, the sureties thereon and himself to pay all moneys collected by him into the State treasury, but which also contains a provision that the collector shall perform his duties as such generally, may be enforced against them for a failure to pay over the money collected to a different officer, under a law afterwards enacted.

Appeal from Anderson. Tried below before the Hon. R. S. Walker.

This suit was brought in April, 1873, in the District Court of Anderson county, against George D. Kelley, George W. Whitmore, and others, as sureties on Kelley's official bond.

The case seems not to have been managed in the court below by the counsel who conducted it in the Supreme Court. Indeed, the amended answers of Whitmore and his co-sureties are signed by the parties themselves "by attorney," the name of the attorney not being given; and they well sustain, in the number of pleas filed, the defendant's side of the "mutual altercations" between the parties.

1. The petition alleged, that George Kelley was elected sheriff on the 1st, 2d, and 3d days of December, 1869, (and had left the State,) and that he gave the bond sued on on the 26th of October, 1870, with Taylor, Hunt, and Whitmore as his sureties. Attached, as an exhibit, was a specification by Whitmore, of the property owned by him, and an affidavit by him that he was worth, above all liabilities, in property subject to execution, the amount for which he was liable on the bond.

The bond is conditioned, that Kelley will perform all the duties imposed on him by law (while in office) and by the instructions of the comptroller for the collection of taxes, and "shall collect, account for, and pay over at the State treasury all moneys collected by him, due the State on account of State taxes."

A copy of the bond was made an exhibit, showing it to be recorded, by the district clerk of Anderson county, 1st of November, 1870. The copy of the bond was certified to by the comptroller on the 27th of March, 1873.

2. The petition charges, that Kelley, as sheriff, during the years 1871–2, collected of the school taxes assessed for those years, on the taxable property of the county of Anderson, $15,208.11.

3. That Kelley had paid John S. Shuttuck of that amount $9,208.11.

4. That John S. Shuttuck was and is the treasurer of the board of school commissioners (altered by amendment to "directors") for the county of Anderson.

5. That said treasurer, as such, had the right to demand and receive and receipt to said sheriff for all said taxes collected by him.

6. That it was the duty of said sheriff, made so by law, to pay the school taxes to said treasurer.

7. That said Kelley was so instructed by the comptroller and by the superintendent of public instruction, De Gress.

8. That though Kelley was often requested to pay said treasurer said money collected during said years, he had failed to pay the same, except $9,208.11, and refused, &c.

9. To damage of plaintiff $10,000.

10. That Kelley had appropriated to his own use, and embezzled, in Anderson county, in 1872, $6,000 of said money collected, and had left the State.

11. That said sureties have failed to pay said $6,000 so appropriated by Kelley.

All of the defendants' sureties were served with process.

The answer of Whitmore and Hunt, filed August 6, 1873, pleaded—

1. General exceptions.

2. Special exceptions: 1st. That Kelley was not made a party defendant. 2d. That the petition shows a larger amount collected on the bond than sureties were liable for.

3. A general denial, &c.

Special pleas: 1st. That at the date of the bond there was no school law. 2d. That the $9,208.11 was paid to avoid suit.

An amended petition of March 31, 1874, contained—

1. A statement that the admission of payment of $9,208.11 made in original petition was a mistake.

2. A prayer for judgment for $8,000.

In February, 1877, it was suggested that Whitmore had died in October, 1876, and Swan, his administrator, was made a party.

At this stage of the proceedings, the court sustained defendants' exceptions; the State appealed; and in 1875, at Tyler, this judgment was reversed and remanded. (43 Tex., 667.)

Justice Ireland, on that appeal, held, in substance: 1st. That the taxes collected were not county taxes proper, for which a bond to the county should be given, but State taxes covered by this bond. 2d. Their being increased, or additional taxes, by a law enacted after bond was given, is no defense to this action.

A "supplemental" petition, filed February 7, 1876, alleged—

1. That when suit was brought, Kelley was out of the State; that he returned on the 26th of January, 1876; that he was residing in Anderson county. It asked that Kelley be made a party, and that process issue for him, and for judgment against him as well as the other parties, as prayed for in original and amended petitions.

Kelley's answer, filed May 22, 1876, contained—1st. A general exception. 2d. General denial. 3d. Adopted the answers of his co-defendants in every respect.

*Scire facias* was issued, and served on Swan, administrator of Whitmore.

Another answer of Kelley, filed May 31, 1877, pleaded—

1. That he had paid all the tax-money collected as sheriff, and exhibited: 1st. Receipt of W. N. Smith, justice of the

peace of Precinct No. 1, for $266.71, dated February 2, 1872, for assessing in 1871. 2d. Receipt of Shuttuck, for $6,500, part of school tax, January 2, 1872. 3d. Receipt of Wood & Williams, approved accounts, &c., $112.64.

2. And that the balance collected by him had been paid to the proper officers.

A denial and exceptions of plaintiff to the plea of payment, filed May 31, 1877, contained—

1. General exceptions.

2. Special exceptions, which were: 1st. That the persons and items were not shown. 2d. That the items in Wood & Williams' receipts were not valid offsets.

3. A general denial of facts in the plea of payment.

The exceptions and plea of Taylor, Hunt, and Swan, administrator of Whitmore, filed May 31, 1877, contained—

1. A plea that the court had no jurisdiction, and that suit should have been brought in Travis county.

2. Special exceptions, which were: 1st. That the sheriff had no authority to collect the school tax; that he was not the collector of them. 2d. That the law for the collecting of the school tax was unconstitutional. 3d. That said tax was a new and distinct burden on the sheriff, after the contract of suretyship was made. 4th. That said collection was not a duty upon the sheriff by law, according to the condition of the bond.

3. Exceptions general: That the petition did not charge any breach of said bond, in this: that the bond required him to pay to the State treasurer, which breach was not alleged.

4. Exceptions special again, which were: 1st. That the petition did not state amounts collected in 1871, and the same plea as to 1872. 2d. That the petition did not state what school tax was collected; by whom assessed; and the amount per cent. of said tax. 3d. That it did not state the items of tax collected; from whom collected, or what time collected; and that it was vague, indefinite, and not sufficient.

At this stage the court ruled on the exceptions of the 31st

of May, 1877; overruled exception to jurisdiction, and third exception, last above, as to items, &c.; sustained as to first and second exceptions, last above, as to amounts in 1871 and 1872.

Plaintiff had leave to amend, and after amendment the petition was sustained.

June 1, 1877, other counsel came in, and a new start was made in pleading over.

Defendants presented a plea of the statute of limitations, claiming that the suit was not brought within four years from the time Kelley failed to pay over the money.

An amended petition, of June 1, 1877, averred that Kelley, the sheriff, collected the one per cent. school tax, as alleged in original petition; that he had failed to pay the same to Shuttuck as charged, and had failed to pay the same over at the State treasury, as it was his duty by law, &c., under the rules prescribed by the regulations of the board of education for the government of public schools, to pay it to Shuttuck, the treasurer of the board of school directors of Anderson county; and that said regulations were the law, and binding on the sheriff.

Exceptions of defendants were filed 1st of June, 1877, containing—

1. A general exception to the amended petition, filed 1st of June, 1877.

2. Special exceptions, as follows: 1st. That the regulations of the board of education did not require or bind the sheriff to pay to Shuttuck. 2d. That they were not the law of the land. 3d. That they could not change the terms of bond requiring him to pay it to State treasury.

Another amended petition set forth—

1. That Kelley never made any report or return of the school tax so collected, as charged.

2. That if made, it was lost by Shuttuck, the treasurer, and also secretary of the board of school directors of Anderson county.

3. That said tax was assessed, as charged in the original petition, by the board of school directors of Anderson county, according to law and directions of State board of education.

4. That the book or memorandum of said assessment of said tax by Shuttuck, treasurer, as charged, was lost by him, and cannot be produced by plaintiff.

5. That therefore plaintiff cannot state the particulars as to exact time of assessment, or bill of particulars as to amounts collected; and prays court to hear proof, and for judgment as in original petition.

Exceptions of defendants to amended petition, filed 1st of June, 1877, were filed, containing a general exception and a special exception, "because it was not stated at what time Shuttuck lost the book, nor where he lost it."

An amended answer of the sureties, of June 1, 1877, was filed, setting forth—

1. That if Kelley collected as charged, it was not by virtue of his office, but as a trespasser, because he was never made the collector by any legal body.

2. That it was not a duty imposed on him by law, or by the instructions of the comptroller, as prescribed by the bond.

3. That he collected under an unconstitutional law.

4. That the assessment was made in an unconstitutional manner.

5. That at the time of the date of the bond, the sheriff was required to collect ordinary State revenue, to secure which the bond was executed by defendants, as sureties, and it covered that only; that on April 22 and 24, 1871, this extraordinary new and illegal tax was provided, which was illegally assessed; that it was double the previous tax; that it was not contemplated in giving the bond, and defendants never consented to the increased responsibility.

Another amended answer, 1st of June, 1877, alleged—

1. That Kelley, as sheriff, gave another and special bond for the collection of said school tax, by directions of the board

of education, on the 26th of July, 1872, which was recorded and approved by the proper officers on 1st of August, 1872.

2. That the sheriff's default, if any, was after 26th of July, 1872.

General exceptions were presented to the answer and amended answer of June 1, 1877.

Upon the exception to amendment of plaintiff of the 1st of June, 1877, the court overruled the exceptions. Thereby the petition and amended petitions were sustained, as presenting a cause of action.

Upon the exception of plaintiff to defendants' amended answer, filed June 1, 1877, the exceptions were sustained, " except so much as sets up giving a new bond."

The case was submitted to the jury, who rendered a judgment for plaintiff for $6,910.49, and costs, from which Swan, administrator, appealed. The statement of facts is quite voluminous, and it is not believed, in view of the opinion, that any further reference to it is necessary.

A motion for new trial was made—

1. For alleged error in overruling demurrer and exceptions urged in exceptions filed 31st of May, 1877.

2. For overruling demurrer to jurisdiction.

3. For admission of testimony. (No bill of exceptions to any was made out.)

4. Because court found contrary to law and evidence.

The motion was overruled, and notice of appeal given.

Swan, administrator, assigned errors as follows:

1. Court erred in overruling exceptions to jurisdiction.

2. Court erred in overruling exceptions to petition.

3. Because the law was passed after the date of the bond.

4. The law was unconstitutional, and acts of sheriff under it did not bind sureties.

5. Because the petition was liable to special exceptions, by not showing how much tax was collected in 1871 and 1872.

6. No sufficient evidence to support judgment.

7. No evidence of levy of said taxes not paid over.

8. The board, if it did, had no authority to levy the taxes.

9. There was no sufficient proof that they were assessed.

10. There was no proof of demand of the sheriff to pay over the taxes.

*George W. & Horace Chilton,* for appellant.

I. We maintain, that since the passage of the act of 1870, (Paschal's Dig., 7638,) suits against defaulting tax collectors must be instituted in the District Court of Travis county. The enactment of this statute operates as a constructive repeal of the sixth clause of article 1423 of Paschal's Digest, which conferred the jurisdiction upon the District Court of the county "where the defalcation occurred." The use of the word "may," in the later act, does not countervail this contention, for this word is to be construed in the imperative rather than the potential mood, if this interpretation seems to comport with the intention of the Legislature.

II. This court having decided that the one per cent. school tax was unconstitutional, we assume the fact of its unconstitutionality as granted, and proceed to consider, whether the sureties of a tax collector are liable for taxes which he has collected under an unconstitutional law. Such a collection is an act done *colore officii,* and does not bind his sureties. It is analogous to an act of a sheriff who collects money under an execution, after its return-day. In that case, the sheriff collects money in the name of the plaintiff in execution, and the defendant in execution supposes the collection is to be appropriated to the satisfaction of the judgment creditor's demand; still, the sureties of the sheriff are not liable to the judgment creditor for this money. (Haley *v.* Greenwood, 28 Tex., 680.) We apprehend that no sound distinction can be drawn between such a case and the case at bar.

Mr. Cooley (Const. Lim., 187) states the law to be, that "when a statute is adjudged unconstitutional, it is as if it had never been." If the school law had never been, perforce, this action could not have been maintained. (See, also,

Loomis *v.* Spencer, 1 Ohio St., 153; Downing *v.* Roberts, 21 Vt., 441; Henckler *v.* County Court, 27 Ill., 39; Governor *v.* Pearce, 31 Ala., 465; Sample *v.* Davis, 4 Green, (Iowa,) 117; Edwards *v.* Taylor, 4 Bibb, (Ky.,) 353; Arderry *v.* Commonwealth, 3 J. J. Marsh, (Ky.,) 184; May *v.* Johnston, 2 Bibb, (Ky.,) 220; Dane *v.* Gilmore, 51 Me., 544; Foxcroft *v.* Nevens, 4 Greenl., 72; Dudley *v.* Oliver, 5 Ire. (N. C.) Law, 227.)

*Reagan, Greenwood & Gooch,* for appellee.

ROBERTS, CHIEF JUSTICE.—The first assignment of error, that the court erred in overruling the exceptions of defendants, setting out the objection that the District Court of Anderson county had no jurisdiction over this case, is not well taken.

It proceeds on the position that Travis county alone has jurisdiction of such a suit, since the passage of the law of 1870, permitting suit to be brought in Travis county, and authorizing the comptroller to proceed in a summary way in the collection of taxes against a defaulting tax collector. (Paschal's Dig., art. 7638.)

That provision is evidently designed to furnish a cumulative remedy. It says the "sheriff and his sureties shall be liable to be sued on their bond or bonds, in the District Court of Travis county."

In the law regulating proceedings in the District Court, it is provided, that "in cases of fraud, and also in cases of defalcation of public officers,   *   *   *   suit may be instituted in the county where the fraud was committed, or where the defalcation occurred, or where the defendant has his domicil." (Paschal's Dig., art. 1423.)

Unless the law of 1870 could be held to give to the District Court of Travis county exclusive jurisdiction, there could be no question about the jurisdiction of the District Court of Anderson county; for, so far as this is a question of venue, the defendants waived it, if they ever could have raised it, by

9

pleading to the merits in their first answer, filed several years before the filing of this exception to the jurisdiction.

The second, third, fifth, and sixth assignments relate to the rulings of the court upon exceptions, general and special, to the sufficiency of the petition. The only exception that was not fully obviated by the numerous amendments, was that the petition did not allege how much of the alleged unpaid taxes were collected in 1871, and how much in 1872.

The petition shows that the sheriff was elected in December, 1869, gave the bond sued on the 26th of October, 1870, as sheriff, (his term of service, by law, was four years,) and that, as sheriff, he, during the years of 1871 and 1872, collected the school taxes assessed for those years, amounting to $15,208.11. In one amendment it is alleged that he, Kelley, had collected the one per cent. school tax, as charged in the original petition, and in another amendment it is alleged that said tax was assessed, as charged in the original petition, by the board of school directors of the county of Anderson, pursuant to law and to the directions of the State board of education, and that the book or memorandum of said assessment, kept by Shuttuck, treasurer, and the book or memorandum of said taxes so collected, were lost.

What is meant here by the repeated expression, " as charged in the original petition " ? Not that it was the one per cent. school tax, or that it was assessed by the board of school directors of Anderson county; for neither of those facts had been charged in the original petition. But it was charged in the original petition that the sheriff had, during 1871 and 1872, collected $15,208.11 of school taxes, assessed for said years; and by the amendments it is meant to be stated that the tax thus alleged in the original petition to be collected was the one per cent. school tax, and that it was assessed by the board of school directors of Anderson county; and it was alleged in the original petition, and in each of the two amendments referred to, that Kelley had collected the assessed taxes as sheriff, and had failed to pay them over.

It is unnecessary to consider how much better, or how much worse, it could have been stated to represent the fact that Kelley, as sheriff, had collected, during the years 1871 and 1872, $15,208.11 of the one per cent. school taxes, assessed for said years by the board of school directors of Anderson county. Such is the meaning of the pleader, shown in substance through the original and several amended petitions considered together. If during these two years he collected this amount of tax as charged, and had not paid it over, or some part of it, it was certainly not material, so far as anything appeared in the petition, or in its amendments, whether it was collected in one or in both of those years; and if in one, not material which.

The defendants pleaded that Kelley, on the 26th of July, 1872, gave another and special bond for the collection of the school taxes, by the direction of the board of education; and that if any default was made by him, it was after that date, and his sureties on this bond were not liable for it. The court overruled exceptions to this plea, thereby giving the defendants the right to limit their responsibility to any default made in collection of the taxes, previous to that date, during the years 1871 and 1872.

The questions arising upon the third, fourth, and ninth assignments of error, that the law creating the taxes, the collection of which is sued for, was enacted after the date of the bond sued on, and that the law itself was unconstitutional, which imposed the said taxes, were decided against the defendants by this court in this case, here on appeal in 1875, and we have no wish to reconsider the conclusions then arrived at. (The State v. Kelley, 43 Tex., 667.)

This court decided the levy of the one per cent. school tax to have been unconstitutional when sought to be enforced by a tax collector against a citizen tax-payer, because the Constitution contemplated the management and direction of the public schools, and the disbursements of the funds collected by taxes imposed, to be vested in local boards in the school

districts, subject to the supervision of the superintendent of public instruction; and the law created a central board, composed of the governor, attorney-general, and superintendent, and vested it, in effect, with the absolute power of control and direction of the local boards. This was obviously a perversion of the provisions of the Constitution, in the establishment of a public-school system that erected a central power of rule unknown to the Constitution, utterly destructive of the constitutional rights of the local authorities, and, whether designed so or not, a dangerous engine of political power. (Willis v. Owen, 43 Tex., 41.)

But this presents the case of an officer, acting for the State, in the collection of taxes as imposed by the acts of the Legislature, calling in question the validity of the act under which he has collected the taxes from the tax-payers, and refusing to pay the same. This he cannot be allowed to do, as it has been attempted in this case. (Morris v. The State, 47 Tex., 583.)

It is argued, that as the bond, in one of its terms, provided for the payment of moneys collected into the State treasury, any law or regulation providing differently did not bind the sureties. But that was not all. The bond contained a condition for the performance of his duties generally; and surely no regulation or law providing for its payment to an officer in Anderson county, where it was to be used, would be imposing a new obligation, not within the purview and objects of the terms of the bond. It must have been contemplated, that the Legislature might, from time to time, change the then prescribed duties of the sheriff as tax collector; and this law was not a departure from that object.

The seventh, eighth, tenth, eleventh, and twelfth assignments of error relate to the insufficiency, or want of evidence of the levy, or of the assessment of the taxes alleged to have been collected and not paid; of the demand of their payment from the sheriff, and of the collection of them by the sheriff. The words "levy" and "assessment" are used indiscrim-

inately in the pleadings and in the evidence, which is liable to produce some confusion in a proper understanding of what is meant in each case, when they are so used.

The direct evidence of a levy by the school board is slight; but that Kelley's deputy received the tax-roll containing the assessment of the school tax, including the one per cent. tax, that he collected them under, and by virtue of said assessment, and paid the money so collected to Kelley, as sheriff, and that it was demanded by Shuttuck, the treasurer, and that he had authority to receive it, and that it, to the extent of the amount of the judgment, was not paid, or in any way accounted for by Kelley, are facts fully established, and they are deemed sufficient to sustain the judgment in this case. (Paschal's Dig., arts. 6676, 6677, and regulations of board of education, in evidence.)

AFFIRMED.