GEO. F. SIMONS ET AL. v. COUNTY OF JACKSON.

(Case No. 2014.)

1. COUNTY TREASURER'S BOND — SCHOOL FUND.— The statutory bond required of a county treasurer (Rev. Stat., art. 989) renders the sureties thereon liable for any misappropriation of the school fund, of any description, without reference to the source from which it might be derived. It includes all available school funds obtained from the state treasurer, as well as interest arising from bonds procured through the sale of the four leagues of land set aside to each county. and interest on notes given on their sale.

2. SAME.— If the county court should, through error, appropriate permanent instead of available school funds, for school expenses, and make the county treasurer their custodian, the sureties on his official bond would be liable for their safe-keeping.

3. SAME.— The sureties on the official bond of a treasurer will be held liable for the safe-keeping of school money received by him as such, though at the time of the execution of the bond its receipt by the treasurer may not have been contemplated by the parties.

4. SAME — JUDGMENT.— Judgment against a defaulting treasurer, for school funds intrusted to his custody as such, should bear interest from the first of the year succeeding his default.

APPEAL from Jackson. Tried below before the Hon. Wm. H. Burkhart.

Suit by Jackson county against George F. Simons and Frank B. Owens, sureties of Wm. Wood, late treasurer of that county, who, it was alleged, had absconded and was insolvent, and therefore was not sued.

The cause was tried by the court without a jury, and a judgment rendered in favor of the plaintiff for the sum of $1,385.19, being for $1,233.11 principal, and interest thereon from January 1, 1883.

The sum claimed was interest paid by purchasers of Jackson county school land.

It would seem that none of the interest on the school land notes was in the hands of the treasurer when the bond sued on was executed, and it was alleged in the defendants' answer, to which exceptions were sustained, that the receipt of any school land notes interest was not in contemplation of the parties to the treasurer's bond when it was executed.

*Glass & Callender* and *Stockdale & Proctor*, for appellants, cited in support of their proposition that the sureties were not bound: Thompson on Liability of Officers and Agents of Corporations, p. 531, § 20; White v. East Saginaw (Sup. Ct. of Mich., 1880), 10 Cent. L. J., 496, 497, and cases there cited; Grocers' Bank v. Kingman, 16 Gray, 473; Robinson v. Milland, 133 Mass. (see Amer. Law Reg., May, 1883, vol. 22, p. p. 349, 350); City of Harrisonville v. Porter (Sup. Ct. of Mo., 1883). See 16 Cent. L. J., p. 96; Nat. Mech. Banking Association v. Conkling (N. Y. Ct. of App.), reported in 15 Cent. L. J., 373, 374.

*A. B. Peticolas*, for appellee, that the sureties were bound, cited: Borden v. Houston, 2 Tex., 594; State v. Kelly, 43 Tex., 667; Houston Co. v. Dwyer, 59 Tex., 113; Broome v. United States, 15 How., 143, 158; Gauson v. United States Circuit Court, U. S. for La., Strong, Judge, Oct. term, 1878, Cent. Law J., vol. 8, p. 155; King v. United States Circuit Ct. Ohio, Oct. term, 1878, Miller, J., Cent. L. J.; United States v. McCartney, U. S. D. C. Mass., Lowell, J., 1879, 10 Cent. Law J., 113; Wylie v. Gallagher, 46 Pa. St., 205; Boehmer v. Schuylkill, 46 Pa. St., 452; Walker v. Chapman, 22 Ala., 116; Ford v. Clough, 8 Me., 334; Mahaska v. Ingalls, 14 Iowa, 170; R. S., art. 2987; Evans v. State, 36 Tex., 323; Burnett v. Henderson, 21 Tex., 588, 590; Atkins v. Ware, 35 Tex., 583; Close v. Fields, 13 Tex., 625.

WILLIE, CHIEF JUSTICE.— The bond upon which this suit was founded was conditioned that Wood, the county treasurer, would safely keep and faithfully disburse the school fund according to law, and pay such warrants as might be drawn on said fund by competent authority.

These are the conditions prescribed by law for the bond to be given by the county treasurer to secure the school fund belonging to the county. R. S., art. 989.

The language of the statute would make the sureties upon such

bond liable for any misappropriation of the school fund of any description without reference to the source from whence it might be derived.

The available school fund, as defined in arts. 3703 and 3704 of the Revised Statutes, embraces only such moneys as are partitioned among the various counties from the treasury of the state. The bond includes that fund within its protection (id., art. 4036); but this is not the only fund which in contemplation of law may be made available for the annual expenses of the free school system. Each county has four leagues of land allotted to it for school purposes. These lands belong to the counties and may be sold in manner as prescribed by commissioners' courts, the proceeds to be invested in bonds, and the interest accruing upon these bonds is to be made available for the current expenses of the free schools of the respective counties to which it belongs. This interest when received by a county must go into the hands of its treasurer, and is secured by the letter and clear intent of the conditions we have recited. It is the duty of the county treasurer to receive all moneys belonging to the county, from whatever source they may be derived (id., art. 9), and the theory of the law is that the bonds prescribed for his execution cover all the moneys thus coming into his custody. Had it been the intention of the law to protect by the bond in question only a portion of the school fund, it would have so stated. By using terms comprehensive enough to embrace the entire fund, it was clearly intended to include at least all such amounts as were subject to disbursement by the county commissioners' court. Were the amounts alleged in this case to have been embezzled embraced by words of this description? They consisted of interest upon notes received for the purchase money of the four leagues of land granted to Jackson county for school purposes. If instead of taking notes the county had received money and exchanged it for bonds, the interest upon these bonds would, as we have seen, have been available for the current expenses of the county's free schools. The interest upon the proceeds of these bonds are not, therefore, in contemplation of law, a part of the permanent school fund, but of that which is to be used in payment of annual expenses. In this case it was so treated by the commissioners' court, and was by them duly transferred to the available fund, and as such committed to the care and custody of the county treasurer. It then became his duty safely to keep it and faithfully to disburse it, and for his default in these respects we think the sureties upon the bond in question were responsible.

If the appropriation of this fund to school expenses made by the

commissioners was unauthorized, we do not see that this would excuse the bondsmen, for it is well settled that the sureties of an officer intrusted with public funds are liable for his defalcations, though the moneys in his charge were collected and placed there without warrant of law. For instance, the sureties of a tax collector are responsible for the taxes collected by him, though they were obtained under an illegal or void assessment. County of Mahaska v. Ingalls, 14 Iowa, 170; Ford v. Clough, 8 Me., 334; Boehmer v. Schuylkill, 46 Pa. St., 452; Wylie v. Gallagher, id., 205.

This, in effect, disposes also of the point made that the sureties cannot be held liable for the money recovered in this suit, for the reason that it did not come into the treasurer's hands till after the bond was executed. The money was received during the term of office for which the bond was given, and it was money which, as we have seen, the law contemplated should be taken into keeping by the county treasurer. The condition of the bond including this character of funds, it was not imposing a greater burden upon the sureties than they had agreed to bear, to make them responsible for it.

Numerous cases may be found in the reports of our own and other states where the sureties upon official bonds have been held liable for funds received by their principal after the execution of the bond, which funds it was not at the time contemplated should come under his charge. Borden v. Houston, 2 Tex., 594; Houston v. Dwyer, 59 Tex., 113; State v. Kelly, 43 Tex., 667; Broome v. United States, 15 How., 143; United States v. McCartney, 10 Cent. L. J., 113; Walker v. Chapman, 22 Ala., 116.

But we think the court erred in not adjudging interest upon that amount from January 1, 1881, instead of January 1, 1883.

The defalcation seems to have occurred in 1880, during the existence of the bond upon which this suit is founded. It is only on this supposition that the suit can be maintained upon the present bond. If it occurred after the term for which the defendants were sureties, they were not liable; but the sureties for his next term were alone responsible. Interest should have been computed from the first of the year succeeding the default, which was 1881. The judgment will therefore be reversed and rendered for the appellee for the principal sum recovered below, with interest from January 1, 1881, and the costs of this court and the court below.

REVERSED AND RENDERED.

[Opinion delivered February 27, 1885.]