T. L. Oglesby's Sureties v. The State of Texas.

No. 6795.

1. **Sureties on Official Bond.**—That the State can not ascertain which of two sets of sureties may be liable for the common principal's default is no ground for joining the sureties in two successive bonds as defendants in an action to recover the amount of the defalcation.

2. **Successive Bonds.**—The obligations of those upon the latest official bond are separate and distinct from those of the first bond. The liability upon one is in no way dependent upon the liability of those upon the other.

3. **Case Adhered to.**—Screwmen's Benevolent Association v. Smith, 70 Texas, 160, adhered to.

4. **Approval of Collector's Bond by Comptroller.**—Upon an actual approval of a tax collector's bond by the Comptroller it is not necessary to the validity of the bond that the approval be endorsed upon it.

5. **Defaulting Tax Collector.**—The fact of default by a tax collector does not affect the liability of a bond given upon a re-election. It is not the duty of the Comptroller to declare an office vacant upon such fact.

APPEAL from Travis. Tried below before Hon. W. M. Key.

The opinion states the case.

*Simpson & James* and *Ware & Evans* for appellants. —1. Where as in this case the sureties on the two bonds are different the obligee has no right to join both bonds in one suit on the mere allegation that the obligee is ignorant of when the default occurred or to which bond it is chargeable. The plea in abatement for misjoinder and the special demurrers should have been sustained. Barry v. Screwmen's Ben. Assn., 67 Texas, 250; Screwmen's Ben. Assn. v. Smith, 70 Texas, 172.

2. A collector is not authorized to assume the functions of his office nor to exercise same under our statutes until his bond is finally approved by the Comptroller, and where such approval is withheld his predecessor should be deemed to hold over until the approval is made, and in a case where a collector succeeds himself his first bond is the operative bond until the new bond is approved. Rev. Stats., arts. 4730, 4731, 4732, and 4735; State v. Wells, 61 Texas, 562.

*J. S. Hogg,* Attorney-General, and *J. H. Robertson,* District Attorney, for appellee. — 1. If it be admitted that the court below erred in overruling appellant's plea in abatement and demurrers as to the misjoinder of parties defendant, that error has been waived by appellants because they have wholly failed to assign as error the action of the court on the exceptions to the misjoinder of parties, and this court will not consider questions not assigned as errors. Rev. Stats., art. 1037; Cannon v. Cannon, 66 Texas, 682.

2. The sureties on both bonds were properly joined as defendants in this suit under the allegations in plaintiff's petition, and the court did

not err in holding that there was no misjoinder of defendants.    Love v. Keowne, 58 Texas, 191.

3.    The appellants having executed the bond sued on and their prin-cipal having filed the same with the Comptroller and proceeded under the same in collecting taxes, they are bound thereby, and the approval of the bond by the Comptroller on the 24th of August, 1887, under the circumstances of this case was sufficient to render the same binding. Wright v. Leath, 24 Texas, 24; Poer v. Brown, 24 Texas, 34; Ring v. Gibbs, 26 Wend., 502; Bank of U. S. v. Dandridge, 12 Wheat., 64; Dutton v. Ketsey, 2 Wend., 616; Sheltinger v. Yendes, 12 Wend., 309.

GAINES, ASSOCIATE JUSTICE.—At the general election held in Novem-ber, 1884, T. L. Oglesby was elected sheriff of Maverick County, which office in that county imposed upon him the duties of collector of taxes as well as those ordinarily devolved upon a sheriff.    He took the oath and gave the bonds required by law and his bonds were duly approved. He was re-elected in November, 1886, and again took the oath and exe-cuted bonds.    His bond as tax collector was approved by the Commis-sioners Court and was forwarded to the Comptroller.    He resigned in January, 1887, and the bond of his successor was finally approved by the Comptroller on the 31st day of that month.

He was found to be in arrears to the State, and this suit was on the 4th of September, 1888, instituted by the State against him and the sureties upon both of his bonds as tax collector to recover the amount for which he had made default.    Upon the hearing a judgment was ren-dered against Oglesby and the sureties on the first bond for $574.77, and also against him and the sureties on the second bond for the sum of $688.46.    From this judgment the sureties on the second bond prose-cute this appeal.

The appellants excepted to the petition upon the ground that its alle-gations did not distinctly show the liability of the sureties upon the sec-ond bond for the principal's default.    These exceptions were overruled by the court, and the ruling is assigned as error.    The petition alleges the election of Oglesby for the two successive terms and the execution and approval of the two bonds, and makes the sureties upon each bond parties defendant.    It is also alleged in effect that Oglesby had collected taxes due the State in excess of what he had paid over or accounted for amounting to the sum of $1104.39.    An itemized account of his debits and credits was annexed to the petition, from which it appeared that the taxes with which he was charged were collectable during his first term of office.    The petition also contains this averment:    "That as the account herein sued upon and hereto attached as an exhibit is for taxes for the year 1886 upon the tax rolls of 1886 it is impossible for plaintiff to say whether or not the money due plaintiff is due as money collected under

the said bond of date of December 4, 1884, or as money collected under
said bond of date of November 16, 1886, and the sureties of both parties,
are made defendants herein, to the end that whatever equities that may
exist between them on said two bonds, if any, may be equitably adjusted
in this suit, and thus a multiplicity of suits avoided by casting the liabil-
ity where it justly belongs." The effect of this averment is merely to
allege that from the evidence at hand the plaintiff had been unable to de-
termine during which term of office the money had been misapplied.
The difficulty of determining this question raises no equities between the
sureties on the respective bonds. The demand of the State against the
sureties on either bond was strictly a legal demand, and the defenses to
it were of a like character.

There is no privity between the sureties upon the first bond and those
on the second. Their obligations were separate and distinct, and the lia-
bility of those upon the one bond was in no sense dependent upon the
liability of those upon the other. It is true that both sets of sureties
were not responsible for the same defalcation, and that from the very
nature of the case what the one set was liable for the other was not. But
this fact does not establish any legal or equitable relation between the
sureties on the one obligation and those on the other, nor does it in a
suit to recover upon either or both relieve the State from the necessity of
alleging unequivocally the facts which show the unconditional liability of
the parties sought to be charged. To allege in a petition against A and
B that A is liable if B is not, and that B is liable if A is not, does not
allege the unconditional liability of either. We know of no authority
which tolerates such pleading in cases like the present. The petition was
defective and the demurrer should have been sustained.

In Screwmen's Benevolent Association v. Smith, 70 Texas, 168, it was
held in effect that suits upon two successive bonds of the treasurer of a
corporation could not be consolidated, for the reason that they could not
properly be joined in one action. That case presented the same difficulty
of determining which of two sets of sureties were responsible for the offi-
cer's defalcation as appears in this and involves precisely the same prin-
ciple. The misjoinder of the causes of action was, however, not made
a ground of special exception by the appellants in this case.

It is also complained that the court erred in holding that the appel-
lants were liable in any amount, because it was not shown that the bond
signed by them had ever been approved by the Comptroller. The facts
in regard to that matter are that the bond was promptly executed after
Oglesby's second election and was approved by the Commissioners Court
and forwarded to the Comptroller, by whom it was received in due time.
Upon receipt of the bond the Comptroller wrote to Oglesby acknowledg-
ing the receipt and stating that the bond was "good in all respects," but
that he would not approve it because he appeared upon the books of the

department to be in arrears to the State on account of money collected by him during his previous term of office. The letter also requested Oglesby to adjust his account so that the bond could be approved. We do not regard it as essential to the validity of a bond which requires the approval of an officer that he should write the word "approved" upon it. It must be in fact approved, but its approval may be inferred from its being filed and acted upon. Wright v. Leath, 24 Texas, 24, and cases cited.

Did the Comptroller approve the bond under consideration? We think his letter to Oglesby showed that he did. His duty was to see that it was sufficient in form and amount, and that it was executed by the officer, with the proper number of good and sufficient sureties. He examined the bond, found it "good in all respects," and retained it in his custody. We are of opinion that there his jurisdiction over the matter ceased. Section 20 of article 3 of the Constitution provides that "no person who at any time may have been a collector of taxes * * * shall be eligible to * * * any office of trust or profit under the State government until he shall have obtained a discharge for the amount of such collections," etc. We are however of opinion that it was not the function of the Comptroller to determine the question of Oglesby's eligibility to his office, although the evidence may have been before him which showed that he had not obtained his discharge for the moneys collected by him. It was simply the Comptroller's duty to pass upon the bond and if good to approve it and deposit it in his office. He found the bond good, and the evidence shows it was deposited in the office, where it was subsequently endorsed "approved." This was after Oglesby had adjusted his account upon the Comptroller's books, but also after he had resigned his office. This latter approval was too late to affect the liability of the sureties on the bond. But since in our opinion the bond was in fact approved in the first instance we think no subsequent approval was necessary. We conclude that the court did not err in holding that appellants were liable for any defalcation which occurred upon the bond during their principal's second term of office.

At what time the money was misapplied is a fact to be determined by the evidence. If no direct evidence can be had then resort must be had to presumptions together with any circumstances which throw light upon the transactions. If the defalcation was not discovered until after Oglesby had entered upon his second term of office the presumption would be that it occurred during that term, and it would be incumbent upon appellants in order to absolve themselves from liability to show either directly or by circumstances that it took place at an earlier period.

For the refusal of the court to sustain the demurrer to the petition the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered May 7, 1889.