R. L. West held the office of clerk of the district court of Denton county for four consecutive terms, each lasting two years. His first term began January 1, 1925, and the Ætna Casualty Surety Company was surety on his official bond for that term. His second term began January 1, 1927, and the Ætna Company was again surety on his official bond for that term. His third term began January 1, 1929, with the New Amsterdam Casualty Company surety on his official bond for that term.
The Fidelity Casualty Company of New York became surety on his official bond for his fourth term, which began January 1, 1931. Each of said bonds was in the sum of $5,000.
During the year 1925, the city of Dallas instituted a suit in the district court of Denton county against George M. Hopkins to compel specific performance of his alleged contract to convey certain real estate, and on July 15, 1925, judgment was rendered in favor of plaintiff for title to the land sued for on condition that the city would deposit in the registry of the court the sum of $3,812.20, the contract price for the use and benefit of the defendant Hopkins. The city of Dallas performed that condition by depositing that sum with the clerk for the benefit of Hopkins, on July 20, 1925. Hopkins refused to accept the deposit and prosecuted an appeal from the judgment, and succeeded in reversing the judgment of the trial court and recovering final judgment denying plaintiff city any relief. Hopkins v. Dallas (Tex.Civ.App.)297 S.W. 347. A mandate of the Supreme Court putting in force that final judgment was issued on the 15th day of March, 1928. Hopkins having failed to take down the deposit, the city of Dallas then had the right to withdraw it. Judge John Speer was a member of the law firm in Denton employed by the city of Dallas to collect the claim, and, according to his testimony, the truth of which was not controverted, he discussed it with R. L. West, the district clerk, in February, 1931, telling him then that probably the city soon might ask for the money deposited with him in that suit, but witness did not make a definite demand for the money until late in June or early in July, 1932. The clerk told him in answer to that demand that for lack of funds he was unable to comply with it; and the proof showed that money so deposited has never been refunded to the city.
This suit was instituted on October 13, 1933, by the city of Dallas in the name of the state of Texas, the named payee in all of those official bonds, against R. L. West, as principal, and all the sureties on the official bonds, to recover the amount of money deposited by the city in the former suit. The petition included the allegation that the city of Dallas does not "know at what time during which term of office so held by said R. L. West said funds were dissipated, misapplied, or appropriated by the said R. L. West to his own use and benefit, which lack of knowledge makes it difficult to determine when the default sued for herein occurred and which surety herein is primarily liable therefor, but that *Page 828 
all are made defendants that the rights between them and plaintiff as well as those among themselves may be determined by the court in a single suit.
"That from and after the date plaintiff paid into the registry of the district court of Denton County, Texas, and said fund was received by said defendant, R. L. West, it became a trust fund in his hands, subject to be withdrawn when and if the City of Dallas should show itself entitled to receive the same and that each and all, jointly and severally, of the defendants sureties on said respective bonds, are liable to this plaintiff for the return of said fund, which liability upon the part of said respective surety defendants originated with the date of the execution, delivery and acceptance of the respective bonds signed by them and has continued to this date and will continue until defendant, R. L. West, or one or more of said defendant sureties shall have repaid to this plaintiff said sum of money, with legal interest thereon since the date of the demand by it of its return, which is alleged to be on or about July 1st, 1932."
Judgment was rendered in favor of plaintiff against R. L. West, as principal, and the Ætna Company, as surety on his official bond for $4,269.66, the amount of the deposit with interest; and that plaintiff take nothing of the other two surety companies. Also, that the Ætna Company take nothing on its plea over against either of the other two surety companies.
At the outset we will say that permission given to plaintiff by the terms of article 1989, Rev. St., to sue all those surety companies in the same action if, as alleged in its petition, "it is difficult to determine when the default sued for occurred and which set of sureties on such bonds is liable therefor," does not carry with it the right to a joint and several judgment against all for any defalcations of the district clerk, regardless of when the same occurred, as insisted by plaintiff in the suit. It is elementary that a surety bond given by a public official does not cover defaults which occurred prior to the date when it became effective, or defaults occuring after expiration of the term covered by the bond. 34 Tex.Jur., pp. 578, 579; Oglesby's Sureties v. State of Texas, 73 Tex. 658, 11 S.W. 873; Simons v. County of Jackson, 63 Tex. 428; 22 R C. L. pp. 513, 514.
The Ætna Company urged a general demurrer and several special exceptions to plaintiff's petition. In one of those exceptions it is insisted that the petition was insufficient for lack of allegation that the trust fund sued for was misappropriated during either of two terms of office covered by the Ætna bonds. And by further special exception to the petition and by special answer filed thereto, the point is made that the city of Dallas did not have the right to demand of the clerk the return of the trust fund in question until March 15, 1928, when the Supreme Court finally decided the former suit in favor of Hopkins, and that neither in plaintiff's petition nor by evidence introduced on the trial was there any showing that on that date West, the district clerk, then had on hand the trust fund in question, or funds from any other source which he could have used to pay the city the amount of its demand. The other surety companies also presented general demurrers and special exceptions to the sufficiency of the petition against them for lack of a showing that the trust fund was in possession of the clerk at any time their respective surety bonds were in effect. And in addition to general denials, all the surety companies invoked the defense of limitation of both two and four years, and, further, that the loss of the deposit was due to the negligence of the city of Dallas in failing to demand of the clerk a return of the trust fund within a reasonable time after March 15, 1928, the date it had the right to make such demand.
The Ætna Company also pleaded over against the other companies for any judgment that might be recovered against it.
In view of the provisions of article 1989, Rev. St., we believe it manifest that the court did not err in overruling the general demurrers and special exceptions to plaintiff's petition, above noted, for lack of a showing just when the defalcation occurred, and, therefore, which surety company was liable therefor. Linz v. Eastland County (Tex.Com.App.) 39 S.W.2d 599, 77 A. L. R. 1466.
From January 1, 1925, to December 24, 1928, West deposited all trust funds coming into his hands in the Exchange National Bank. On the last-named date the Exchange National Bank closed, but the deposits then to the credit of the clerk were finally paid in full when the affairs *Page 829 
of the bank were liquidated. Thereafter, West deposited all such funds in the First State Bank until he went out of office. Throughout his incumbency in office he received trust funds from various sources, and the deposits thereof in the Exchange Bank were all in one general trust fund account, with no showing of the separate interests of the different beneficiaries. Deposits made by him in the First State Bank were all in one general account covering trust funds, fees of office, and all other sums received by him as district clerk, with no showing of the respective sources of those deposits.
The Ætna Company's two bonds covered the entire period during which deposits were made in the Exchange National Bank.
The checks which were drawn by West on both banks had all been destroyed, and there was no evidence to show the names of any of the payees. Althis Jones, the National Bank examiner, testified that he had the original ledger sheets of the Exchange National Bank showing West's trust fund account in that bank, designated as "West R. L. D.C. Trust Fund," which showed varying credit balances from time to time. The balance on February 14, 1925, was $3,354.39, and those balances ranged from $75 on July 1, 1926, which was the lowest, to $11,500 on December 2, 1926, which was the highest, and $6,019.24, on December 24, 1928, which was the day the bank closed.
Fee Boner, bookkeeper for the First State Bank, testified that West opened his account with the bank on January 5, 1929, and that his account was closed March 15, 1933. "He carried no district clerk account and no trust fund account and no tax account in our bank; he carried it all in one account as District Clerk." That account also showed credit balances from time to time in varying sums. It was opened on January 5, 1929, with a deposit of $1,571.72, and on December 1st it was $4,247.01.
On January 1, 1930, his balance was $2,723.36, and on December 31, 1930, $137.04. The largest credit balance during that year (1930) was $5,719.39, of date March 22d, and the smallest $137.04, of date December 31, 1930.
On January 1, 1931, his credit balance was $137.04, and $33.39 at the close of that year. The largest credit balance for that year was $3,875.41, of date June 20th, and the smallest, $33.39, of date December 28th.
On January 1, 1932, his credit balance was $33.39, and $822.46 of date December 1st. His largest credit balance during that year was $1,205.55, of date September 21st, and on August 2d he had an overdraft of $53.32. West went out of office at the close of the year 1932.
On January 1, 1933, his credit balance was $637.60, which was the largest during that year, and on March 15, 1933, when his account was closed, was $403.
Oglesby's Sureties v. State of Texas, 73 Tex. 658, 11 S.W. 873, 874, was a suit upon two surety bonds given by Oglesby as sheriff and tax collector. After the expiration of his first term he was re-elected to a second term of office, and a separate surety bond was given for each term. Suit was brought against him and the sureties on both bonds for defalcation occurring while he held the office. In disposing of that case, this was said: "It is true that both sets of sureties were not responsible for the same defalcation, and that from the very nature of the case what the one set was liable for the other was not. * * * At what time the money was misapplied is a fact to be determined by the evidence. If no direct evidence can be had, then resort must be had to presumptions, together with any circumstances which throw light upon the transactions. If the defalcation was not discovered until after Oglesby had entered upon his second term of office, the presumption must be that it occurred during that term, and it would be incumbent upon appellants, in order to absolve themselves from liability, to show, either directly or by circumstances, that it took place at an earlier period."
To the same effect was Arbuckle v. State, 81 Tex. 191, 16 S.W. 876. See, also, 34 Tex.Jur., p. 579; 22 R. C. L. pp. 516, 517; 46 C. J. pp. 1073-1082; Stinson v. Board of Supervisors of Buchanan County, 153 Va. 362,149 S.E. 531.
City National Bank v. Eastland County (Tex.Civ.App.) 12 S.W.2d 662,667, also in 39 S.W.2d 599, 77 A. L. R. 1466 (Tex.Com.App.) under title of Linz v. Eastland County, involved the question of liability of the respective sureties on three official bonds furnished by three successive county depositories of Eastland county. The funds belonging to the county had been deposited in the depository banks, and *Page 830 
against those depositories warrants had been drawn by the county from time to time; and the question at issue was which set of bondsmen should be held liable for the loss of some of the funds for which the county never received any benefit. In the opinion of the Court of Civil Appeals, this was said: "It is a well-established rule that, when payments are made upon a current account by a debtor to a creditor and no application is made by either, the law will apply the payments according to priority of time, liquidating the oldest items first. [Citing cases.] * * * The relation, as stated, is that of debtor and creditor. Each deposit made in a bank creates a new item of indebtedness due by the bank to the depositor, and each check or voucher cashed by the bank constitutes a payment by the debtor on its account, consisting of various items owing to the creditor."
And that rule for the application of payments was applied in that case. That announcement was especially approved by the Commission of Appeals in the same case as shown in 39 S.W.2d 599, 603, 77 A. L. R. 1466. To the same effect, see also, 26 R. C. L., p. 1357, and authorities there cited.
As shown above, after the deposit by the city of Dallas with the clerk of $3,812.20 in controversy, on July 20, 1925, other deposits were made and checks drawn on the whole fund without any designation of any particular trust fund to be used in satisfaction of the checks. The checks so drawn aggregated far more than the deposit by the city, and on different dates the credit balances were wholly insufficient to meet the deposit in question, even though no other trust fund had been commingled with it. And under the rule announced in the above decision and other authorities cited, it must be held that that deposit was exhausted during the period covered by the first, or at least the second, bond given by the Ætna company, which amounted to a misappropriation of the trust fund and a breach of trust by the clerk during that period and for which the Ætna Company is liable as surety.
The only other issues to be discussed are the defenses of the statutes of limitation.
In the case of Hatcher v. State, 81 S.W.2d 499, the Commission of Appeals held that a cause of action, such as the one at bar, was upon the failure of the officer to perform his statutory duty, and that his official bond was merely collateral security for the performance of that duty, and that the statute of two years, and not the statute of four years, was applicable.
It is a familiar rule that limitation does not run in favor of a trustee as against the beneficiary of the trust until he repudiates the trust and brings notice thereof to the beneficiary.
In the Linz Case, supra, the four years' statute of limitation was held applicable to certain of the bonds given by the depositary banks which were conditioned that they would faithfully perform all the duties and obligations devolving upon them by law and pay upon presentation all checks drawn upon them by the county treasurer, and faithfully keep and account for all county funds, comply with all legislative requirements, and perform all duties therein required; while in the present suit the obligation of the sureties was conditioned, in general terms, for the faithful discharge by the clerk of the duties of his office. And under the rule in the Hatcher Case it would seem that the two-year statute of limitation (Vernon's Ann. Civ. St. art. 5526) would control in this suit at all events.
However, the refusal of the district clerk to meet Judge Speer's demand, made in behalf of the city of Dallas for the payment of the deposit in question, was the first notice to the city of the clerk's repudiation of the trust, and therefore limitation, if any, would not begin to run until that date. That demand was made the latter part of June or the 1st of July, 1932, which was well within the two years preceding the institution of the suit on October 13, 1933.
The trust created by the deposit with the clerk was primarily for the benefit of Hopkins, and had the final judgment in the former suit been in favor of the city, and had the deposit been dissipated by the clerk during the pendency of that suit, then the clerk would have been liable therefor to Hopkins and not to the city of Dallas, the depositor. But the clerk owed the duty to the city to keep the fund for its ultimate benefit should it be decreed in the former suit that Hopkins was not bound to accept it on the condition it was deposited. That was his official duty, and necessarily made him trustee for the benefit of both the city and Hopkins. Therefore, we cannot concur in the *Page 831 
contention of appellant that after termination of the former suit the clerk then held the fund, not in his official capacity, but as a gratuitous bailee, owing no legal duty with respect to it other than to exercise ordinary care for its preservation, and, therefore, the loss of it was not covered by either of the bonds executed by appellant.
And since the liability of the appellant, evidenced by its contracts on which it was sued, was not conditioned upon the exercise of ordinary diligence by the city to withdraw the deposit within a reasonable time after it had the right to do so, the defense of contributory negligence of the city in failing to demand of the clerk the return of the deposit at a time when, according to his testimony and his credit balances from time to time, it would have been paid, was not available; the suit against the surety being upon contract and not merely for tort of the clerk. 46 C. J., § 412, p. 1074.
The judgment of the trial court is affirmed.
 On Motion for Rehearing.
After a more thorough consideration of this case we are convinced that we erred in sustaining the action of the trial court in overruling the defense of the statute of limitation of two years interposed by appellant Ætna Casualty Surety Company and rendering judgment against it in favor of plaintiff, the city of Dallas.
As shown in our original opinion, the decision of the Supreme Court in the former suit in favor of Hopkins became final on March 15, 1928. After that decision was rendered, plaintiff, the city of Dallas, had the lawful right at any time to demand of West, the district clerk, a return of the amount it had deposited with him primarily for the benefit of Hopkins, but no demand was made therefor until the latter part of June or the 1st of July, 1932, more than four years, and this suit was not instituted to recover the deposit until October 13, 1933, which was approximately five years and seven months after plaintiff had the lawful right to demand the return of the deposit. But since the obligation of the clerk was implied rather than contractual, with no date fixed for its performance, we believe a demand of him therefor within a reasonable time was an integral part of plaintiff's cause of action therefor, and was necessary in order to set in motion the statute of limitation in his favor and in favor of his bondsmen. 28 Tex.Jur. pp. 138 to 143; 17 R. C. L. par. 122, p. 756; par. 167, p. 800.
But we are also convinced that it did not lie with the city of Dallas to toll the running of the statute of limitation at its pleasure and without any excuse offered therefor, whether the clerk was holding the money as a trustee and liable therefor as such under his official bond or liable as a bailee under the common-law rules applicable to bailments.
Plaintiff was in no position to invoke the equitable doctrine that a trustee or bailee, when sued for a trust fund that has been placed with him, cannot rely upon the statute of limitation as a defense until he repudiates the trust and brings knowledge thereof home to the beneficiary, with no excuse offered for its laches in sitting idly by for more than four years before demanding a return of the deposit and more than five years before instituting the suit, during which time the deposit was unlawfully dissipated by the clerk. 17 Tex.Jur. par. 50, p. 51.
The following announcement in 28 Tex.Jur. par. 59, p. 142, is well supported by decisions of this state cited in the text: "Where a demand is a condition precedent to suit, the plaintiff may not, by failing or refusing to perform the condition, toll the running of the statute and reserve for himself the right to sue within the statutory period from such time as he decides to make a demand. On the contrary, it is the general rule that in such a case a demand must be made within a reasonable time after it may lawfully be made. What this reasonable time is depends upon the circumstances of each case, and in this respect no definite rule has been laid down. The question is one of fact for the jury, and not of law for abstract judicial decision. Ordinarily, however, in the absence of mitigating circumstances, a time coincident with the running of the statute will be deemed reasonable, and if a demand is not made within that period the action will be barred."
To the same effect are the following authorities in other states: Purcell Bank Trust Co. v. Byars, 66 Okla. 70, 167 P. 216, and other authorities there cited.
We adhere to the conclusion expressed in our original opinion, that the statute of limitation of two years is controlling in this case, and, for the reasons stated above, the motion of appellant Ætna *Page 832 
Casualty Surety Company for rehearing is granted, the judgment rendered against it by the trial court is reversed, the former judgment of this court affirming it is set aside, and judgment is here rendered sustaining its defense of limitation of two years, and denying the city of Dallas, plaintiff below, the relief prayed for as against appellant Ætna Company. In all other respects, our former judgment is left undisturbed.