## SETTEGAST et al. v. HARRIS COUNTY.

### No. 11270.

Court of Civil Appeals of Texas. Galveston.

Feb. 5, 1942.

Rehearing Denied Feb. 26, 1942.

George L. Charlton, of Tomball, and Lester Settegast, both of Houston, for appellants.

Dan W. Jackson, Dist. Atty., Conrad J. Landram, Asst. Dist. Atty., Lewis & Knipp, and Ernest A. Knipp, all of Houston, for appellee.

MONTEITH, Chief Justice.

This is an appeal from a judgment of the district court of Harris County rendered in a consolidation of two suits filed by appellee, Harris County, one against the estate of Mrs. Lucy Charlton, deceased, and the other against Mrs. Mamie Settegast, and the sureties on the bonds of James Charlton, deceased, and Mrs. Settegast, as treasurers of Harris County, to recover certain fees and compensations paid to them as treasurers of Harris County for the account of certain drainage districts in Harris County, and by the Houston-Harris County Ship Channel and Navigation District, hereinafter called the Navigation District, during the calendar year of 1936.

Both actions involved the construction of Article 16, Section 61, of the Constitution of the State of Texas, Vernon's Ann.St., commonly known as the "salary amendment", and Senate Bill No. 5 of the Second Called Session of the 44th Legislature of Texas, commonly known as "the salary bill", Vernon's Ann.Civ.St. arts. 3896–3899, 3901, 3902, 3912e.

In a trial before the court judgment was rendered in favor of appellee, Harris

County, and against appellants and the sureties on said bonds.

Prior to January 1, 1936, the county treasurer of Harris County received in addition to compensation paid for handling county funds, one-fourth of 1% upon all moneys received, and one-eighth of 1% of all moneys paid out by him for the account of the drainage districts of Harris County. He also received the compensation fixed by the commissioners of the Navigation District.

On August 24, 1935, the electorate of Texas adopted the "Salary Amendment" to the State Constitution, Section 61 of Article 16, which required that all county officers in counties having a population of 20,000 or more, according to the then last preceding Federal census, should be compensated on a salary basis. Pursuant to that constitutional provision the Legislature enacted Chapter 465, Acts 44th Leg., 2d C. S., 1762. The provisions of the Act became effective January 1, 1936.

James Charlton was treasurer of Harris County from January 1, 1936, until his death on July 19 of that year. His daughter, Mrs. Mamie Settegast, was appointed treasurer to succeed him. She assumed the duties of the office, and finished the unexpired term, which ran to January 1, 1937.

This suit involves the right of the treasurer to retain the commission on funds received and paid out for the various Drainage Districts of Harris County under Article 8148, which was enacted in 1913, and the compensation paid him by the Navigation District under the provisions of Article 8221, R.C.S., and which was enacted in 1925.

James Charlton collected all of the commissions on the Drainage District funds and received the compensation paid by the Navigation District up to the time of his death. His widow, as independent executrix of his estate, collected the remaining sums which had accrued but had not been paid to him. After his death, Mrs. Settegast received and appropriated to her use said fees and compensation on the theory that the authority given the Commissioners' Court in the "Salary Bill" to fix the treasurer's salary merely prescribed the amount of the salary to be allowed the treasurer for handling County funds and that it neither applied to nor precluded the retention by him of compensation received from said Drainage Districts and the Navigation

District for services rendered them. This suit was brought by Harris County to recover the items paid to the treasurer by the Drainage Districts and the Navigation Districts during the year 1936.

The controlling question presented in this appeal is whether, under Section 61 of Article 16 of the constitution, and the provisions of Chapter 465, Acts 2d C.S. 44th Legislature, making effective such constitutional provisions, the compensation of the treasurer of Harris County was limited to the maximum salary of $3,600 provided in said Chapter 465, and whether this was the maximum amount which could be lawfully paid to him as treasurer of Harris County for the year 1936.

The material parts of Article 16, Section 61, of the Constitution of the State of Texas, read:

"All district officers in the State of Texas and all county officers in counties having a population of 20,000 or more, according to the then last preceding Federal Census, shall from the first day of January and thereafter, and subsequent to the first Regular or Special Session of the Legislature after the adoption of this Resolution, be compensated on a salary basis. * * *

"All fees earned by district, county and precinct officers shall be paid into the county treasury where earned for the account of the proper fund, * * * and provided that where any officer is compensated wholly on a fee basis such fees may be retained by such officer or paid into the treasury of the county as the Commissioners' Court may direct. All Notaries Public, county surveyors and public weighers shall continue to be compensated on a fee basis."

It will be observed that the constitutional provision very plainly provides two things: (1) That all county officers shall be compensated upon a salary basis alone, and (2) that all fees earned by county officers shall be paid into the county treasury for the account of the proper fund.

The first paragraph of Section 19, Acts 44th Legislature, 2d C.S., 1774, Vernon's Ann.Civ.St. art. 3912e, § 19, reads: "Provisions of this Section shall apply to and control in each county in the State of Texas having a population in excess of one hundred and ninety (190,000) thousand inhabitants, according to the last preceding Federal Census."

It is undisputed that Harris County had a population in excess of 190,000 inhabitants according to the last Federal census, therefore the compensations to be paid officers are controlled by said Section 19 of the Salary Bill.

Subsection (i) of Section 19 contains the following provision: "The Commissioners' Court of each county affected by the provisions of this Section, at its first regular meeting in January of each calendar year, may determine, by order made and entered in the minutes of said court, that all fees, costs, compensation, salaries, expenses, etc., provided for in this Section, shall be paid into and drawn from the general fund of such county; in which event each reference in this Section to a salary fund shall be read as and interpreted to be 'General Fund'."

Pursuant to the authorization of this section of the statute, the commissioners' court of Harris County, on January 30, 1936, entered an order providing that all fees and other compensations collected by the district and county officers should be paid into, and that their expenses should be paid out of, the general fund.

Subsection (e) of said Section 19 reads: "The Commissioners' Court of each county shall determine annually the salary to be paid to the County Treasurer at a reasonable sum not to exceed Three Thousand, Six Hundred ($3,600.00) Dollars per annum * * *."

Pursuant to its authorization under this section of the statute, the commissioners' court of Harris County, on February 25, 1936, entered an order fixing the salary of the County Treasurer for the year 1936 at $3,600 per annum.

Subsection (j) of said Section 19 requires that each county officer shall continue to charge for the benefit of the officers' salary fund of his office all fees and commissions which he is now, or may hereafter be, authorized to charge and collect from the State of Texas for services performed by him in civil proceedings and to file claims for fees or commissions due for services provided by law.

Subsection (k) of said Section 19 provides that no officer receiving a salary shall receive any ex-officio compensation from the county, and directs that the commissioners' court shall transfer from the general fund such funds as may be necessary to pay salaries and other legally authorized expenses of each office when the funds collected by the officer are insufficient to pay the claims.

Subsection (n) of said Section 19 provides that: "Each district, county and precinct officer shall keep a correct detailed statement of all amounts earned by him and of sums coming into his hands as fees, costs, and commissions, in a book to be provided for him by the proper authorities of the county for that purpose in which the officer at the time when fees or moneys are earned or shall come into his hands shall enter the same in such form as may be lawfully required."

Subsection (o) of said Section 19 fixes the fiscal year and makes provision for annual reports. It provides that all officers receiving an annual salary as compensation for their services shall, on or before the 5th day of each month, file with the county auditor on prescribed forms a detailed and itemized report of all fees, commissions and compensations collected by him during the preceding month, and shall forthwith pay into the officers' salary fund for his office, all fees, commissions and compensations collected by him during said month.

Subsection (p) of said Section 19 provides that no district, county or precinct officer shall, under the penalties now provided by law, waive any fees or costs, but that it shall be the duty of all officers to assess and collect all fees and commissions which they are permitted or directed by law to assess or collect for services performed by them, and that where any officer receives a salary payable from the salary fund created for such officer all fees, commissions and other compensation received by him in his official capacity shall be by him deposited and paid monthly or oftener into the salary fund created for such officer, and such remittance shall be accompanied by his official report thereof.

Subsection (q) of said Section 19 provides that the annual reports of said officers shall show the amount of all fees, commissions and compensations whatever earned by said officers during the fiscal year and the amount of fees, commissions and compensations collected by him during the fiscal year and their disposal, and that it shall be the duty of the criminal district attorney to institute proceedings for the collection of such fees, commissions and compensations, all of which are declared to be the

property of the county and shall be deposited in the general fund.

Under said Article 8148 it was made the duty of the treasurer of Harris County to receive and disburse the funds of said Drainage Districts, and under said Article 8221 it was made his duty to receive and disburse the Navigation District funds. There is no provision in either of said articles that the treasurer shall or may retain either the compensation from the Navigation District or the commissions from said Drainage Districts, as his personal property, and there is nothing in either article which indicates that the functions of the county treasurer in the service of these two agencies were imposed by virtue of an office separate and distinct from the office of the County Treasurer. They were, we think, additional duties required of the county treasurer of Harris County by the legislature under the rule that the legislature may require public officers to perform additional duties not inconsistent with the duties performed by them.

The question here presented has, we think, been decided by our Supreme Court in the case of Nichols v. Galveston County, 111 Tex. 50, 228 S.W. 547. In the Nichols case, the assessor relied upon a statute which specifically authorized the payment to him of ex-officio compensation. The statute under which he claimed additional compensation in the assessment of certain drainage taxes was a part of the statute under which appellants herein claim commissions on Drainage District funds paid to the treasurer. The court held that the assessor was required to account for the "compensation" paid by the commissioners' court in connection with the assessment of drainage taxes and the "commissions" on the assessment of independent school district taxes.

This holding is strengthened, in the instant case, by the fact that Subsection (s) of said Section 19 expressly exempts Notaries Public, public weighers and county surveyors from the provisions of said Section 19. It does not except therefrom the office of county treasurer.

Under above facts, we think that both the constitutional amendment and the legislative act under consideration definitely and specifically limited the amount of the salary which could be paid to the county treasurer and to his assistants, and that the compensations of James Charlton and Mrs. Settegast as county treasurers for the year 1936 were limited to the maximum salary provided in said Chapter 465 to the sum of $3,600.

Appellants in both cases specifically pled and here contend that the items involved, which were collected more than two years prior to the date of the filing of the suits, were barred by the 2-year statute of limitation.

Both of the original suits were filed on October 3, 1938, against appellants, including the sureties on the bonds of James Charlton and Mrs. Mamie Settegast. The items listed in appellee's petitions, amounting to the sum of $1,640.38, are undisputed. They were collected over a period extending from January 1, 1936, to the latter part of January, 1937. Of this amount the sum of $600 was collected by James Charlton prior to his death; the sum of $349.31 was collected by Mrs. Lucy Charlton, his widow, and the independent executrix of his estate. No bond was executed by said executrix in favor of Harris County. The sum of $661.07 was collected by Mrs. Mamie Settegast as treasurer. W. J. Clay and Mrs. Mamie Settegast were sureties on James Charlton's official bond as treasurer.

This identical question as to all sums collected with the exception of the sum of $349.31, collected by the executrix of the estate of James Charlton, deceased, has been decided by our Supreme Court contrary to appellants' contention in the case of Throckmorton County v. Thompson, 131 Tex. 543, 115 S.W.2d 1102, 1105. The court in this case held that a county's suit against the county treasurer and her bondsmen to recover the amount of commissions paid in excess of sums allowed by orders of the commissioners' court was "a suit on a written instrument", and that the 4-year and not the 2-year statute of limitations applied. The court cited the cases of McKinney et al. v. Robinson, 84 Tex. 489, 19 S.W. 699; Charlton et al. v. Harris County, Tex.Civ.App., 228 S.W. 969, affirmed 111 Tex. 588, 243 S.W. 459; and Hillman v. Gallagher, 103 Tex. 427, 128 S.W. 899.

The 2-year statute of limitation applies, we think, with respect to the liability of W. J. Clay and Mrs. Mamie Settegast as sureties on James Charlton's official bond to the extent of the sum of $349.31, since it was collected more than two years prior

to the filing of these suits. Jeff Davis County v. Davis, Tex.Civ.App., 192 S.W. 291; Steusoff v. Liberty County, Tex.Civ. App., 34 S.W.2d 643.

It follows that the sum of $349.31 must be deducted from the judgment in the sum of $949.31 rendered by the trial court against W. J. Clay and Mrs. Mamie Settegast as sureties on the official bond of James Charlton, deceased. Allowing this credit, we find that Harris County is entitled to recover against them, as such sureties, only the sum of $600, instead of the sum of $949.31 as rendered by the trial court.

The judgment of the trial court is in all other respects affirmed.

Reformed and affirmed.

### On Motions for Rehearing.

In our original opinion we held that the two year statute of limitations applied with respect to the liability of W. J. Clay and Mrs. Mamie Settegast, as sureties on James Charlton's official bond, for payments made to the executrix of his estate after his death. In this we were in error.

After a more thorough consideration of the cases involved in this appeal, we conclude that, under the record, said sureties were not liable to Harris County, as sureties on said bond, for any payments made to Mrs. Lucy Charlton after James Charlton's death.

In a statement in appellants' original brief which is unchallenged by appellee, it is stated that the payments on James Charlton's salary from the navigation and Drainage District from July 1, 1936, until his death on July 19, 1936, amounting to the sum of $349.31 were not received by him during his lifetime, but that they were received by Mrs. Lucy Charlton, as executrix of his estate, after his death and more than two years before the filing of the suits involved in this appeal.

Under Article 1704, R.S. 1925, a county treasurer is required to give a bond conditioned that "* * * such treasurer shall faithfully execute the duties of his office and pay over according to law all moneys which shall come into his hands as county treasurer". The official bond of James Charlton complied in all respects with the statute.

It is elementary that bonds are strictly construed and that a surety bond given by a public official does not cover defaults which occurred prior to the date it became effective or defaults which occurred after the expiration of the term covered by the bond. Aetna Casualty & Surety Co. v. State, Tex.Civ.App., 86 S.W. 2d 826; 34 Tex.Jur., pp. 578, 579; Oglesby's Sureties v. State, 73 Tex. 658, 11 S.W. 873; Simons v. Jackson County, 63 Tex. 428.

Under the above authorities, James Charlton's terms of office as treasurer of Harris County automatically expired at his death and the sureties on his bond were then only liable as such sureties, for payments received and unlawfully withheld by him while such treasurer prior to his death and not thereafter.

In our original opinion, we overlooked the fact that the sums of money collected by Mrs. Lucy Charlton, as executrix, after James Charlton's death, amounting to the sum of $349.31, were included in the judgment rendered by the trial court against the heirs at law and the legal representatives of James Charlton and Mrs. Lucy Charlton, deceased.

While the heirs, devisees and legal representatives of James Charlton and Mrs. Lucy Charlton, deceased, were unquestionably liable to Harris County for sums belonging to the County which were unlawfully collected by Mrs. Lucy Charlton after James Charlton's death and retained by them, the County was not protected by James Charlton's official bond or any other written instrument against such collections and the two-year statute of limitations (Article 5526, subd. 4, R.S.1925) which provides that all actions for debt where the indebtedness is not evidenced by a contract in writing, shall be commenced and prosecuted within two years after the cause of action shall have accrued and not thereafter, applies as to these collections, and the County's action against them is barred to the extent of the said sum of $349.31 under the admitted facts. Aetna Casualty & Surety Co. v. State, Tex.Civ.App., 86 S.W.2d 826.

It follows that the judgment of the trial court and of this court must be reformed so as to provide that the former judgment in the sum of $949.31 against W. J. Clay and Mrs. Mamie Settegast, as sureties of the bond of James Charlton, deceased, and against Mrs. Mamie Settegast, Mrs. Alice Woodruff and George L. Charlton, as heirs and devisees of the estates of James

Charlton and Mrs. Lucy Charlton, deceased, be reduced by the sum of $349.31 so as to provide for a recovery against them in favor of Harris County, as such sureties, heirs, devisees, executrices and executor, of only the sum of $600, and as thus reformed the judgment of the trial court is affirmed.

Wherefore, appellants' motion for rehearing will be granted, this court's former judgment set aside, and the judgment of the trial court reformed and affirmed in accordance with this opinion. Appellee's motion for rehearing will be refused.

GRAVES, Justice (dissenting).

I dissent from the holdings that the two-year statute applied to the $349.31 item, believing it, too, to have been controlled by the four-year statute instead, in all respects as contended by the appellee—both on original and rehearing.