

# THE ATTORNEY GENERAL
## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

November 21, 1949

Honorable Stewart W. Hellman
Criminal District Attorney
Fort Worth, Texas

Opinion No. V-949.

Re: Reduction in valuation of
property as affecting eligi-
bility of school districts
for Foundation School Fund
grants, and requirement of
county-wide equalization
school districts to report
funds derived from school
maintenance tax as county

Dear Sir:                   available funds.

        Your request for an opinion relates to eligi-
bility of school districts for Foundation School Fund
grants where the value of property has decreased and the
valuation is reduced. It also relates to the accounta-
bility of county-wide equalization school districts for
funds derived from school maintenance tax in reporting
county available funds under S.B. 116, Acts 51st Leg.,
R.S., 1949. The questions submitted are:

        "1. There being no express provision
in the Act, and there certainly being none
in the paragraphs referred to, to prohibit
same, can a school district reduce the valu-
ation on any property or properties in said
district and still be eligible for aid under
said Act?

        "2. Are these funds (county-wide equal-
ization funds) to be reported to the State
Auditor under said Act, particularly under
Subdivision (b), Paragraph 13, State Audit-
or's Form No. GA-2-649?"

        With respect to your first question:

        State and county assessed valuation of the
taxable property of districts is used in the formula

designed for calculating the amount of local funds to be charged school districts. Section 5 of Article VI, S.B. 116, Acts 51st Leg., R.S., 1949 (Foundation School Program Act) reads in part:

> "Divide the state and county assessed valuation of all property in the county subject to school district taxation for the next preceding school year into the State and county assessed valuation of the district for the next preceding school year, finding the district's percentage of the county valuation. Multiply the district's percentage of the county valuation by the amount of funds assigned to all of the districts in the county. The product shall be the amount of local funds that the district shall be assigned to raise toward the financing of its Foundation School Program."

Said section further provides:

> "The County Tax Assessor-Collector in each county, . . . shall certify to the State Commissioner of Education . . . the following information:
>
> "(1) The assessed valuation, on a State and county valuation basis, of all property subject to school district taxation in each school district or portion of school district in such county, and the total assessed valuation of all property subject to school district taxation in the county; . . ."

Section 1, Article VIII of the Constitution of Texas, reads in part:

> " . . . all property in this State shall be taxed in proportion to its value, which shall be ascertained as may be provided by law. . . ."

Section 14, Article VIII of the Constitution of Texas, provides that:

> "There shall be elected by the qualified electors of each county . . . an Assessor and Collector of Taxes, . . . and such Assessor and Collector of Taxes shall perform all the

duties with respect to assessing property for
the purpose of taxation. . . ."

Article 7174, V.C.S., reads in part:

"Each separate parcel of real property
shall be valued at its true and full value
in money, excluding the value of crops grow-
ing or ungathered thereon. . . ."

Article 7206, V.C.S., reads in part:

"Each commissioners court shall convene
and sit as a board of equalization on the sec-
ond Monday in May of each year, or as soon
thereafter as practicable before the first day
of June, to receive all the assessment lists
or books of the assessors of their counties
for inspection, correction or equalization and
approval."

When property is rendered for taxation the
assessor-collector places the property on the tax rolls
if he is satisfied the property is rendered at the rea-
sonable cash market value.  If he is not so satisfied
he enters the reasonable cash market value on the rendi-
tion and the party rendering the property may have the
true value determined by the county commissioners court,
if dissatisfied with the value fixed by the assessor-
collector.  Art. 7211, V.C.S.

Article 7212, V.C.S., provides that:

"The boards of equalization shall have
power, and it is made their official duty, to
supervise the assessment of their respective
counties, and, if satisfied that the valuation
of any property is not in accordance with the
laws of this State, to increase or diminish
the same and to affix a proper valuation there-
to, as provided for in the preceding article;
and, when any assessor in this State shall
have furnished said court with the rendition
as provided for in the preceding article, it
shall be the duty of such court to call before
it such persons as in its judgment may know
the market value or true value of such proper-
ty, as the case may be, by proper process, who

shall testify under oath the character, quality and quantity of such property, as well as the value thereof. Said court, after hearing the evidence, shall fix the value of such property in accordance with the evidence so introduced and as provided for in the preceding article; and their action in such case or cases shall be final."

Section 5 of Article VI, S.B. 116, supra, further provides:

"If there has been a marked increase or decrease in the assessed valuation of a school district within a county, and if the County School Board certifies that the use of the county and school district valuations for the preceding year in determining local fund assignments to the school districts in the county would be inequitable, and recommends a different distribution of the county total than that made by the State Commissioner of Education, such recommendations, subject to the approval of said Commissioner, shall become and be the lawful local fund assignments to such districts."

Manifestly, the quoted provisions of Senate Bill 116 pertaining to valuation of property are in harmony with general law and the Constitution. Senate Bill 116 does not, in our opinion, seek nor operate to alter, change, or disturb the valuation procedure long established and in use for purposes of taxation in this State. Clearly, the language, "If there has been a marked increase or decrease in the assessed valuation of a school district . . ." recognizes that there will be fluctuations in the value of property in school districts. Under the organic and statutory law, change in value must be taken into account. Increase or decrease in assessed valuation may be recognized without affecting eligibility for Foundation School Fund grants by giving effect, in proper cases, to recommendations of the County School Board.

The Foundation School Program Act contemplates limitations upon districts with respect to reduction of tax rate:

"No school district shall be eligible to receive foundation school funds authorized herein which lowers its total school tax rate within two (2) years of the effective date of this Act, if the reduction of such tax rate would reduce the local maintenance tax receipts . . . . " Sec. 5, Art. VI, S. B. 116, Acts 51st Leg., R.S., 1949. (emphasis added)

However, we do not construe this language as in anywise applicable to the power to ascertain value for tax purposes as required by the Constitution and laws of this State, since the subject of this provision is rate of tax as distinguished from value of property to which the rate is applied. The Act contains no provision of similar import relating to valuation. Increase or decrease in valuation would operate to vary the amount of local funds charged to common school districts and independent districts using state and county valuations as indicated by the formula quoted above, but eligibility for grants would not be disturbed.

It is apparent, therefore, that valuation of property in school districts may be reduced, when circumstances and evidence determinative of value require, without affecting eligibility of such districts for foundation school fund grants for which they are otherwise eligible.

With respect to your second question:

Section 3 of Article VII of the Constitution of Texas provides in part:

" . . . And the Legislature may authorize an additional ad valorem tax to be levied and collected within all school districts heretofore formed or hereafter formed, for the further maintenance of public free schools, and for the erection and equipment of school buildings therein; provided that a majority of the qualified property tax-paying voters of the district voting at an election to be held for that purpose, shall vote such tax not to exceed in any one year one ($1.00) dollar on the one hundred dollars valuation of the property subject to taxation in such district, . . ."

Pursuant to authority of this provision of the Constitution, the Legislature has created a number of counties as county-wide equalization school districts having the County Unit System of Education. These districts exercise the taxing power conferred upon school districts by such provision with limitations prescribed in the several Acts when voted by a majority of the qualified property tax-paying voters of the district. Acts 44th Leg., R.S., 1935, Ch. 103, p. 284, Art. 2740g, V.C.S.; Acts 45th Leg., R.S., 1937, Ch. 231, p. 454, Art. 2744e, V.C.S.; Acts 45th Leg., R.S., 1937, Ch. 163, p. 315, Art. 2740f-2, V.C.S.; Acts 46th Leg., R.S., 1939, Sp. Laws, p. 677, Art. 2744e-1, V.C.S.; Acts 46th Leg., R.S., 1939, Sp. Laws, p. 673, Art. 2744e-2, V.C.S.; Acts 47th Leg., R.S., 1941, Ch. 95, p. 121, Art. 2740f-3, V.C.S.; Acts 47th Leg., R.S., 1941, Ch. 233, p. 400, Art. 2740f-4, V.C.S.; Acts 47th Leg., R.S., 1941, Ch. 150, p. 218, as amended, Acts 50th Leg., R.S., 1947, Ch. 85, p. 145, Art. 2744e-3, V.C.S.; Acts 50th Leg., R.S., 1947, Ch. 331, p. 617, Art. 2702-A, V.C.S.; Acts 50th Leg., R. S., 1947, Ch. 399, p. 800, Art. 2740f-5, V.C.S.

Section 6 of Article VII of the Constitution of Texas creates the county available fund:

" . . . Said lands, and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein; said proceeds to be invested . . . and the counties shall be responsible for all investments; the interest thereon, and other revenue, except the principal shall be available fund."

Interest derived from investment of the permanent land or trust fund and other revenue from such fund, except the principal thereof, constitute the county available fund; and only the interest thereon may be used and expended annually. Art. 2824, V.C.S. Section 5 of Article VII of the Constitution of Texas creates the state available school fund and enumerates certain sources of income and revenue for the fund. The Legislature is specifically authorized to supplement the fund by adding not to exceed 1% annually of the total value of the permanent school fund. Section 6, supra, of this Article, contains no provision for adding to or supplementing the county available fund.

Article 2692, V.C.S., provides that the county superintendent shall make pro rata distribution of the state available school fund based on the scholastic census, and:

" . . . shall at the same time apportion the income arising from the county school fund to all the districts, including the independent school districts of the county, making a pro rata distribution as per scholastic census."

Thus, income arising from the county available fund is distributed in the same manner and upon the same basis (scholastic census) as the state available funds apportioned to counties.

The only source of income to the county available fund provided in the Constitution is interest and other revenue derived from the county permanent fund. The Legislature has in effect defined other revenue to include leasing or renting of lands, while proceeds from the sale of timber is required to be invested as proceeds from the sale of land. Art. 2825, V.C.S. In Simons v. Jackson County, 63 Tex. 428 (1885), it is said that interest on notes executed in part payment of the purchase price of land becomes part of the available fund. But, proceeds from a lease conveying land for mining and operating for oil and gas may be said to be permanent funds as the transaction represents a sale of the minerals in place. Ehlinger v. Clark, 117 Tex. 547, 8 S.W.2d 666 (1928).

Article 2827, V.C.S., enumerates the purposes for which the public free school funds may be expended:

" . . . State and county available funds shall be used exclusively for the payment of teachers' and superintendents' salaries, fees for taking the scholastic census, and interest on money borrowed on short time to pay salaries of teachers and superintendents. . . "

This article also describes the purposes for which local funds may be expended:

" . . . local school funds from district taxes, tuition fees of pupils not entitled to free tuition, and other local sources may be

used for the purposes enumerated for State and
county funds and for purchasing appliances and
supplies, for the payment of insurance premi-
ums, janitors and other employees, for buying
school sites, buying, building and repairing
and renting school houses, and for other pur-
poses necessary in the conduct of the public
schools to be determined by the Board of Trus-
tees. . . ."

Sound reason supports the view that the avail-
able fund created by Section 6 of Article VII, supra, is
a fund separate and distinct from other funds made avail-
able by law under any other provision of the Constitution
for the operation, maintenance, and support of the public
free schools. Likewise, the available school fund pro-
vided in Section 5 of Article VII, supra, is a fund sepa-
rate and distinct from other funds made available by law
under any other provision of the Constitution. Both are
constitutional funds. The sources of income or revenue
to each are particularly described by the Constitution
and laws of this State, and the use of each is defined
and restricted by legislative declaration.

Section 1 of Article VI, S.B. 116, Acts 51st
Leg., R.S., 1949, provides that the Foundation School Pro-
gram shall be financed by:

"a. An equalized local school district
effort to the extent hereinafter provided to-
ward the support of this program;

"b. Distribution of the State and Coun-
ty Available School Funds on the basis of the
number of scholastics; and

"c. Allocation to each local district a
sum of State money appropriated for the pur-
poses of this Act sufficient to finance the
remaining costs of the Foundation School Pro-
gram in that district computed and determined
in accordance with the provisions of this Act."

It is abundantly clear, we think, that the
county available fund referred to in the Act and intend-
ed by the Legislature is the available fund provided in
Section 6 of Article VII, supra, and that equalization
funds made available in county-wide equalization school

districts by the levy of a school maintenance tax constitute local funds as distinguished from constitutional available funds and may not be included therein. If the Legislature had intended otherwise, it could have easily so declared.

County-wide equalization funds are derived from a tax levied by districts exercising the taxing power conferred by the Legislature under Section 3 of Article VII, supra, while the available fund is derived from interest and other revenue from public lands or county permanent fund. In general, county-wide equalization funds are by law distributed to districts on a per capita basis according to the scholastic census for the maintenance and support of the schools of the district. However, Article 2740f-5, V.C.S., provides for distribution " . . . according to the financial needs of said school districts . . . so as to provide a salary of not less than two thousand ($2,000.00) dollars per year to any teacher employed. . . ." With this one exception, use of county-wide equalization funds is unrestricted as to purpose, while use of the available fund, as has already been pointed out, is limited by general statute to particular purposes.

The Foundation School Fund created by the Gilmer-Aikin laws, is an <u>operating</u> fund, grants from which are intended to pay professional salaries, transportation and current operating costs other than professional salaries and transportation. It supplements State and county available funds which are also <u>operating</u> funds, as seen from Article 2827, V.C.S., supra. Local funds from district taxes may be used for the erection of <u>permanent improvements</u> and certain other purposes, in addition to those enumerated for State and county funds.

Surely, it was not the intention of the Legislature to supplement building funds of districts with grants from the Foundation School Fund. As observed, Foundation School Fund grants supplement the operating funds. Districts that have levied the county-wide equalization tax, by vote, would be penalized if Gilmer-Aikin grants were reduced by the amount raised locally by such levies. We see no objection to school districts levying county-wide equalization or other local taxes in addition to taxes levied to raise local funds charged to such districts by Senate Bill 116 to supplement either operating funds or permanent improvement funds.

Since Senate Bill 116 contemplates available fund created by Section 6 of Article VII as distinguished from other funds made available by law under Section 3 of Article VII or any other provision of the Constitution, we conclude that, under the Act, county-wide equalization funds may not be required to be reported and accounted for as "county available funds" as that term was used in the bill and in paragraph 13 of the State Auditor's Application for Funds, form No. GA-2-649.

## SUMMARY

Valuation of property in school districts may be reduced, where circumstances determinative of value require, without affecting eligibility of districts for foundation school fund grants. County-wide equalization school districts may not be required to report equalization tax funds as county available funds (construing portion of Article VI, S.B. 116, Acts 51st Leg., R.S., 1949).

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By Everett Hutchinson

Everett Hutchinson
Assistant

EH:db:bh

APPROVED

Price Daniel
ATTORNEY GENERAL